**NOT FOR PUBLICATION**



**FILED**
JAMES J. WALDRON, CLERK

**MAR. 28, 2012**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| In Re: **PHILIP RABINOWITZ,**  Debtor. | Case No.: 10-12538 (DHS) Adv. No.: 11-01074 (DHS) Judge: Hon. Donald H. Steckroth |
|---|---|
| **HANK LUWISCH,**  Plaintiff, v. **PHILIP RABINOWITZ,**  Defendant. | |

**OPINION**

**APPEARANCES:**

**WILENTZ, GOLDMAN & SPITZER, P.A.**
David H. Stein, Esq.
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, New Jersey 07095
*Attorneys for Plaintiff*

**BRAY & BRAY, LLC**
Peter R. Bray, Esq.
Ivy Corporate Park
100 Misty Lane
Parsippany, New Jersey 07085
*Attorneys for Defendant*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion for summary judgment brought by Plaintiff Hank Luwisch ("Plaintiff") against the Debtor-Defendant Philip Rabinowitz ("Defendant") seeking a determination of nondischargeability or, in the alternative, denial of the Defendant's discharge. The Plaintiff loaned the Defendant $350,000 secured by the Defendant's economic rights in various limited liability company ("LLC") membership interests. The Defendant, however, allegedly failed to disclose that he assigned a portion of this collateral to another creditor months earlier. The Plaintiff asserts that, absent the Defendant's misrepresentations, he would not have loaned the funds. Later, the Defendant sold an LLC membership interest, generating proceeds subject to the Plaintiff's security interest. The Plaintiff alleges that the Defendant concealed and subsequently transferred those proceeds to various third parties. Consequently, the Plaintiff seeks a determination of nondischargeability pursuant to the following sections of the Bankruptcy Code: section 523(a)(2)(A) – fraud and misrepresentation; section 523(a)(4) – fraud or defalcation while acting as a fiduciary, embezzlement, or larceny; and section 523(a)(6) – willful and malicious injury.

In addition, the Plaintiff alleges that the Defendant made false statements on his bankruptcy petition, failed to keep adequate records regarding the disposition of the proceeds, and failed to satisfactorily explain the disposition of proceeds. Thus, the Plaintiff argues, the Defendant's discharge may be denied pursuant to the following sections of the Bankruptcy Code: sections 727(a)(2)(A) and (B) – transfers made with intent to defraud or delay a creditor; section 727(a)(3) – failure to maintain documents regarding financial condition or material business transactions; section 727(a)(4) – false statement under oath; section 727(a)(5) – failure to satisfactorily explain loss of assets; and section 727(a)(6) – refusal to obey an order of the court.

The Defendant contends that the loan agreement was unconscionable and usurious and that the security provisions were not meant to be enforceable. Additionally, the Defendant failed to disclose that the Plaintiff's collateral was partially assigned to another creditor because neither the Defendant nor his attorney believed the assignment was enforceable. Similarly, the Defendant explains that he did not turn over or otherwise notify the Plaintiff of the sale proceeds because the Defendant's attorney failed to advise him that he should do so. Lastly, the Defendant argues that any inaccuracies on his bankruptcy petition were mere mistakes and not an attempt to mislead or protect assets.

For reasons discussed below, the Defendant's discharge is denied.[1] The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from

---

[1] The Plaintiff's ten-count adversary complaint seeks a determination of nondischargeability pursuant to section 523(a), or in the alternative, denial of the Defendant's chapter 7 discharge pursuant to section 727(a). After consideration, the Court found sections 727(a)(2)(A) – Count Five – and 727(a)(3) – Count Seven – most appropriate for the facts of this case. Accordingly, the Court need not address the section 523(a) claims or remaining section 727(a) claims.

3

the United States District Court for the District of New Jersey dated July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J). Venue is proper under 28 U.S.C. § 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

**I.     Plaintiff's Facts**

The Defendant, as the President and primary shareholder of The Architectural Group, Inc. ("Architectural Group"), worked primarily as an architect. (Pl.'s Br. in Supp. of Mot. for Summ. J. ("Pl.'s Br."), p. 2) In addition, the Defendant and former Architectural Group employee, Richard Weinstein ("Weinstein"), co-owned a limited liability company, Whitehall Development, LLC ("Development"). (*Id.*) The Defendant and Weinstein also held indirect interests in Whitehall Development at Fort Lee, LLC ("Fort Lee") and Whitehall Towers, LLC ("Towers"). The ownership structure was as follows: (i) the Defendant and Weinstein each owned a 50% membership interest in Development; (ii) Development owned a 100% membership interest in Fort Lee; and (iii) Fort Lee owned a 40% membership in Towers, with the remaining 60% membership interest held by Newco Enterprises, LLC ("Newco"). (*Id.*)

On December 22, 2006, the Plaintiff and the Defendant executed a secured lending agreement ("Luwisch Agreement") together with a promissory note in the amount of $350,000 ("Note"). (*Id.* at p. 3) Pursuant to the Luwisch Agreement, the Plaintiff received a security interest in the Defendant's right to receive distributions from his various limited liability company membership interests.[2] (Cert. of David H. Stein in Supp. of Pl.'s Mot. for Summ. J. ("Stein Cert."), Ex. A at p. 5) The Luwisch Agreement further provides that:

> [n]either the execution nor delivery of this Agreement nor the consummation of the transactions contemplated herein will conflict with, or result in a breach of any of the terms, conditions or provisions or any law or any regulation, order, writ, injunction or decree of any court or governmental instrumentality, or of any agreement or other instrument to which [the Defendant] . . . may be bound, or constitute . . . a default thereunder.

(*Id.* at p. 7)

---

[2] The Luwisch Agreement expressly provides that "[the Defendant] . . . hereby grant[s], give[s] and assign[s] to [the Plaintiff] a security interest in all [his] right, title and interest in and to [Development], [Fort Lee], and [Towers], and any and all right to receive payments therefrom, together with replacements, products and proceeds thereof." (Stein Cert., Ex. A at p. 5)

The Luwisch Agreement also represented that "[Fort Lee] is the owner of forty (40%) percent of the Membership interests of [Towers], free and clear of all Liens." (*Id.* at p. 5; Pl.'s Br., p. 5) In March 2006, months before the Luwisch Agreement, the Defendant allegedly assigned an interest in the above collateral to the law firm Podvey Meanor Catenacci Hildner Cocoziello & Chattman, P.C. ("Podvey Assignment"). (*Id.* at p. 2) Under the Podvey Assignment, the firm received an interest in Whitehall Development's right to receive any and all payments from Towers, up to a maximum of $150,000. (*Id.*) The Podvey Assignment purportedly included a covenant prohibiting Fort Lee from assigning or pledging any of its rights or interest in payments owing from its membership interest in Towers for as long as the Podvey Assignment remained effective. (*Id.* at p. 3) The Defendant failed to inform the Plaintiff about the Podvey Assignment at the time of the Luwisch Agreement. (*Id.* at 5)

The Note matured on January 1, 2009. (*Id.* at p. 7) The Defendant failed to repay the Note. (*Id.*) Consequently, the Plaintiff brought suit in the Superior Court of New Jersey on January 27, 2009. (Pl.'s Reply Br. in Supp. of Mot. for Summ. J. ("Pl.'s Reply"), p. 3) The Defendant failed to answer or otherwise appear in the state action until June 4, 2009 when the Defendant's attorney, Martin Fishman ("Fishman"), filed a certification in opposition to entry of judgment. (*Id.*; Reply Cert. of David H. Stein in Supp. of Mot. for Summ. J. ("Stein Reply Cert."), Ex. B) In his certification, Fishman acknowledged the Defendant's liability for the debt but "determined that it would be improper, a waste of the Court's time . . . by attempting to delay this matter with hyper technical defenses." (*Id.*) On June 16, 2009, the Superior Court entered final judgment against the Defendant in the amount of $380,111.21. (Pl.'s Reply, p. 5; Stein Reply Cert., Ex. C)

On June 3, 2009, the day before Fishman filed his certification in the state action, the Defendant, along with Weinstein and Development, conveyed their interests in Towers to Newco for consideration of $1.5 million. (Pl.'s Br., p. 7) The payment terms were as follows: $300,000 down and the $1.2 million balance in installments beginning in November 2009 and continuing through May 2012. (*Id.*) The Newco sale agreement, like the Luwisch Agreement, contained representations that the Defendant's LLC membership interest was owned free and clear of liens, claims or encumbrances. (*Id.* at p. 8; Stein Cert., Ex C ("Rabinowitz Dep. I") at 389, 411-412) Fishman represented the Defendant in the Newco transaction. (Pl.'s Br., p. 8)

The Plaintiff alleges that, according to a Court ordered accounting of Fishman's trust account,[3] the Defendant received his $150,000 share of the down payment sometime between June 3, 2009 and June 10, 2009. (Pl.'s Reply, p. 4-5; Stein Cert., Ex. H) Rather than using one of the Defendant's bank accounts, the sale proceeds were deposited into Fishman's attorney trust account. (Pl.'s Reply, p. 6; Stein Cert., Ex. E ("Fishman Dep. I") at 68:9-15) On or about December 2, 2009, the first installment payment was made and the Defendant's $100,000 share

---

[3] Order Compelling Production of Documents from Martin S. Fishman d/b/a Law Offices of Martin S. Fishman Under Federal Rules of Bankruptcy Procedure 2004(a) and 2005 [ECF Doc. 53], Aug. 17, 2010. (*See* Stein Cert., Ex. I)

5

was again deposited into Fishman's trust account. (Pl.'s Reply, p. 6; Stein Cert., Ex. H) The proceeds remained in Fishman's trust account while the Defendant directed Fishman to make a number of transfers out of those funds. (Pl.'s Reply, p. 6; Fishman Dep. 68:20-23, 69:14-15) Unaware of the Newco sale, the Plaintiff sought to enforce his judgment by levying upon the Defendant's bank accounts.[4] (Pl.'s Reply, p. 6; Stein Reply Cert., Ex. E, F, and G) At various times between June 10, 2009 and January 28, 2010 – the day before the Defendant filed his bankruptcy petition – the Defendant directed Fishman to make a number of transfers to third parties out of the proceeds held in Fishman's attorney trust account. In total, the following amounts were transferred:

| | |
|---|---:|
| Barbara Rabinowitz (Wife) | $ 35,500 |
| Columbia Savings Bank | $179,975 |
| The Architectural Group | $ 14,675 |
| Martin Fishman | $ 10,500 |
| Daniel J. Yablonsky | $  7,325 |
| **Total:** | **$247,975** |

(Stein Cert., Ex. H)

The Defendant filed his petition under chapter 7 of the Bankruptcy Code on January 29, 2010. The Defendant's statement of financial affairs includes $40,000 in prepetition transfers to Mrs. Rabinowitz, who is not a scheduled creditor. The prepetition transfers to the Architectural Group, however, were not disclosed on the Defendant's petition or statement of financial affairs.[5] Similarly, the Defendant failed to disclose the substantial prepetition transfers made to Columbia Savings Bank ("Columbia"). The Plaintiff alleges that the payments to Columbia were made for the benefit of the Defendant's wife because Columbia holds a mortgage on certain real property, which is wholly owned by Barbara Rabinowitz. (Pl.'s Br., p. 9, 12) Neither the schedules nor the statement of financial affairs has been amended to correct these deficiencies.

On February 23, 2010, the Plaintiff served the Defendant with a 2004 subpoena seeking his deposition and document production. On April 27, 2010, the Court entered an Order denying the Defendant's motion to quash and establishing deadlines for document production and the Defendant's deposition. The Defendant failed to comply with the Court's Order. (*Id*. at p. 14; Stein Cert., ¶ 16) The Defendant appeared for deposition only after the Plaintiff filed a motion for contempt in November 2010. (*Id*. at ¶ 18) Finally, the Plaintiff alleges that the Defendant

---

[4] The Plaintiff successfully levied two of the Defendant's bank accounts netting $166.70. (Pl.'s Reply, p. 6; Stein Reply Cert., Ex. E, F, and G)

[5] On January 28, 2010, the day before the Defendant's petition was filed, he caused Fishman to issue a check to the Architectural Group in the amount of $8,675. (Pl.'s Br., p. 12) The Plaintiff alleges that, as principal of the Architectural Group, the Defendant caused the check to be cashed postpetition and used $5,000 of the amount in partial satisfaction of a prepetition debt owed to Igor Fleyschmakher. (*Id*.; Rabinowitz Dep. I 314:16-23, 317:4-9)

6

has yet to fully comply with his obligation to produce documents pursuant to the 2004 subpoena. (Pl.'s Br., pp. 14-15; Stein Cert., ¶¶ 19-20; Ex. M)

## II.     Defendant's Additional and Disputed Facts

Before executing the Luwisch Agreement, the parties allegedly discussed and agreed that the security interest in the Defendant's LLC membership interests were unenforceable under the terms of each LLC's respective operating agreements.[6]  (Def.'s Br. in Opp'n to Mot. for Summ. J. ("Def.'s Br."), p. 4; Decl. of Peter R. Bray in Opp'n to Mot. for Summ. J. ("Bray Decl."), Ex. E ("Fishman Dep. II") at 124:1-23)  Fishman allegedly counseled the Defendant that "he could sign the Luwisch Agreement even though it had terms that all parties acknowledged were not effective or enforceable[.]" (Def.'s Br., p. 5)  Further, the Defendant failed to disclose the Podvey Assignment to the Plaintiff because both he and Fishman believed it was unenforceable. (*Id*. at p. 5)

Neither the Defendant nor Fishman believed that the Plaintiff held a lien in the proceeds of the Newco sale or that the Defendant was "obliged to turn-over the proceeds from the Newco [s]ale . . . ."  (*Id*. at p. 6; Def.'s Decl. in Opp'n to Summ. J. ("Def.'s Decl."), ¶ 12(a)-(b))  The Defendant asserts that Fishman failed to advise him that the Newco sale should be disclosed to the Plaintiff nor did he advise "that there was any risk, or issue, with respect to the consummation of the Newco sale." (Def.'s Br., p. 6; Fishman Dep. II 188:19-21)  The proceeds of the Newco sale were wired to and held in Fishman's attorney trust account because the Whitehall entities did not have a bank account; the account was not used as a means to protect the funds from creditors.  (Def.'s Br., pp. 6-7; Fishman Dep. II 69:21-24)

Though the Defendant was aware of the state court action filed by the Plaintiff, Fishman believed the Plaintiff sought only a money judgment and not to foreclosure on the security interest.  (Def.'s Br., p. 7; Fishman Dep. II 129:9-18)  Additionally, the Defendant asserts that any inaccuracies on the petition were "the byproduct of inadvertence and not . . . an attempt to mislead or hide the existence of any asset."  (Def.'s Br., p. 7; Def.'s Decl., ¶ 18)  He further asserts that the transfers to Columbia were to pay down a line of credit, which was used in connection with the Architectural Group and for living expenses.  (Def.'s Br., p. 8; Bray Decl., Ex. E and F ("Rabinowitz Dep. II") 311-312:6)  Moreover, the transfers to the Architectural Group were allegedly loans made by the Defendant.  (Def.'s Br., p. 8)  Finally, the Defendant asserts that Fishman acted as his attorney in all matters related to this proceeding.  (*Id*.)  Accordingly, the Defendant "followed Fishman's advice and counsel on what can, what could, and what should[] be done."  (*Id*.)

---

[6] On December 21, 2011, the Court issued an opinion in a related adversary proceeding, *Podvey Meanor Catenacci Hildner Cocoziello & Chattman, P.C. v. Stanziale et al.*, Adv. Pro. No. 10-02435 (DHS), [ECF Doc. 102], dated Dec. 21, 2012, which accords the Plaintiff's state court judgment full faith and credit, thus, validating the Luwisch Agreement and the terms therein.

7

# DISCUSSION

## I. Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial." *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted).

On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II.    Section 727(a)(2)(A) of the Bankruptcy Code

Providing debtors with a fresh start is a core objective of the Bankruptcy Code. A section 727 discharge lies at the "heart" of the Bankruptcy Code's fresh start provisions. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993); *see also* H.R. Rep. No. 595, 95th Cong. 1st Sess. 384 (1977). Denial of a debtor's discharge is "an extreme step" not taken lightly by this Court. *Bezner*, 996 F.2d at 1531. Courts will deny a discharge only in extreme circumstances and will construe the exceptions to discharge strictly against creditors and liberally in favor of debtors. *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir. 1995); *Stapleton v. Yanni (In re Yanni)*, 354 B.R. 708, 711 (Bankr. E.D. Pa. 2006) (stating that a denial of discharge is "by far the most severe penalty a Chapter 7 debtor can receive in the life of a bankruptcy case"). Still, a discharge is a privilege reserved for the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991); *see also Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006) (a discharge is "a privilege, not a right, and should only inure to the benefit of the honest debtor"). "Thus, where a debtor has been dishonest in his dealings with the court or his creditors, it may be appropriate to deny his discharge, notwithstanding that an underlying goal of federal bankruptcy law is to provide a debtor with a fresh start." *Id*.

Section 727(a)(2)(A) of the Bankruptcy Code provides that a debtor will not be granted a discharge where:

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A).

To prevail on a section 727(a)(2)(A) cause of action, a party must prove the following by a preponderance of the evidence: (1) a disposition of property, such as a transfer or concealment; (2) a subjective intent on the debtor's part to hinder, delay, or defraud one or more creditors or the bankruptcy trustee through that disposition; and (3) that both the disposition and subjective intent occurred within one year before the petition date. *See Bezner*, 996 F.2d at 1531.

As a threshold issue, the Defendant admits to transferring well in excess of $200,000 within one year of filing his petition. (Rabinowitz Dep. I 311:4-312:6; *see* Stein Cert., Ex. H) In defense, the Defendant argues that the transfers were not made with intent to defraud or to delay or hinder creditors. The Defendant argues that his alleged wrongful actions were either

performed pursuant to Fishman's advice or the result of Fishman's failure to counsel him against taking such action. The evidence before the Court, however, clearly and overwhelmingly establishes the Defendant's intent to hinder, delay, or defraud creditors, specifically the Plaintiff.

Section 727(a)(2)(A) is disjunctive. Proof of fraudulent intent is not necessary; "proof of an intent to hinder or delay will suffice." *Randolph v. Somerville (In re Somerville)*, 73 B.R. 826, 834 (Bankr. E.D. Pa. 1987); *see Adamson v. Bernier (In re Bernier)*, 282 B.R. 773, 780 (Bankr. D. Del. 2002) (creditor must show either fraudulent intent or intent to hinder or delay). Because a debtor is unlikely to admit that his actions were motivated by fraud or designed to hinder or delay, such intent may be inferred using circumstantial evidence or inferences drawn from a course of conduct. *See Spitko*, 357 B.R. at 301; *see also Office of the U.S. Tr. v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 806 (Bankr. M.D. Pa. 2005). Courts have established certain "badges of fraud" to help determine a debtor's state of mind. Such "badges" include: (1) a gratuitous transfer of valuable property or the transfer of property for inadequate consideration; (2) a close relationship between a transferor and transferee; (3) a transfer in anticipation of a pending lawsuit; (4) a transferor/debtor who was insolvent or in poor financial condition at the time of the transfer; (5) the transfer of all or substantially all of a debtor's property; (6) a transfer that so completely depletes the debtor's assets that the creditor was hindered or delayed in recovering any part of a judgment; and (7) the retention of possession, benefit, or use of the property in question even though title exists in another entity. *E.g., Holber v. Jacobs (In re Jacobs)*, 381 B.R. 147, 164 (Bankr. E.D. Pa. 2008); *La Brioche, Inc. v. Ishkhanian (In re Ishkhanian)*, 210 B.R. 944, 952 (Bankr. E.D. Pa. 1997); *Somerville*, 73 B.R. at 834.

In addition to the above, courts routinely consider the following factors relevant to a debtor's intent: whether the debtor is aware of the existence of a significant judgment or overdue debt, whether the debtor is aware that a creditor is in hot pursuit of its judgment or claim, the general chronology of the events and transactions at issue, and the timing of the transfer relative to the filing of the petition. *Foy v. Carlbon (In re Carlbon)*, 2011 Bankr. Lexis 5083, *8-9 (Bankr. D.N.J. Dec. 20, 2011) (citing *Berneir*, 282 B.R. at 781).

Here, the Defendant was well aware that the Plaintiff was pursuing his claim against him in state court.[7] In fact, the Defendant effectively consented to entry of judgment in the Plaintiff's favor. (*See* Stein Reply Cert., Ex. B) (the Defendant "does not object to the Entry of Judgment" provided the judgment is apportioned consistent with the terms of the Note) Instead, the Defendant sold his interest in Towers and began collecting proceeds – which constitute collateral under the Luwisch Agreement – without noticing the Plaintiff of the sale. Moreover, the proceeds were not deposited in the Defendant's business or personal bank accounts; rather, the

---

[7] (Rabinowitz Dep. I 307:21-23) (*Q*: Were you aware that when you signed the papers with Newco, [the Plaintiff] was suing you? *A*: Yes.); (*See* Stein Reply Cert., Ex. B) (Fishman states that the Defendant was served with the summons and complaint in the state action)

proceeds were harbored in Fishman's attorney trust account.[8] Fishman then disbursed the proceeds according to the Defendant's direction.[9] Notably, the vast majority of transfers occurred within six months of the Defendant's petition. (Stein Cert., Ex. H) Within one month of filing, the Defendant transferred $27,000 to Columbia and $14,675 to the Architectural Group (including an $8,675 check dated January 28, 2010, just one day before filing). (*Id.*) Still, what most concerns the Court is that *all* transfers were made on the heels of a judgment in the Plaintiff's favor and out of funds subject to the Plaintiff's security interest. *See Secundy v. Caparelli (In re Caparelli)*, 131 B.R. 895 (Bankr. S.D. Fl. 1991) (debtor sold creditor's collateral; satisfied personal obligations, including one for the benefit of a third party; and attempted to conceal assets after creditor obtained judgment); *see also First National Bank of Sulphur Springs v. Bastrom (In re Bastrom)*, 106 B.R. 223 (Bankr. D. Mont. 1989) (debtor transferred creditor's collateral; failed to schedule those transfers; and did not provide documents requested by creditor during discovery).

In *Caparelli*, the creditor received a security interest in certain collateral in exchange for partially financing the debtor's purchase of a business. 131 B.R. at 896. After the business failed, the debtor sold the creditor's collateral and then paid off a loan obtained for the benefit of a third party as well as a personal car loan. *Id.* at 897. The debtor soon defaulted and the creditor promptly filed suit against the debtor. *Id.* Around the same time judgment was entered, the debtor obtained a secured loan from a close friend and transferred the funds into a life insurance annuity through which the debtor would receive a monthly payment of $198. *Id.* The bankruptcy court found the above actions sufficient grounds for denying the debtor her discharge.

Here, as in *Caparelli*, the Defendant transferred collateral, satisfied personal obligations shortly before filing, and ostensibly attempted to insulate assets after entry of a judgment against him. Still, the facts in this case appear more egregious than those reviewed by the court in *Caparelli*. Here, the Defendant's prepetition transfers were far more substantial and, as mentioned, were made entirely out of funds subject to the Plaintiff's security interest. Further, the Defendant, possibly attempting to avoid a potential levy,[10] kept the proceeds in Fishman's

---

[8] Fishman denies that his trust account was used to protect the proceeds from creditors. (Fishman Dep. I 69:21-24) The Court does not find this testimony credible. The Defendant testified that the funds were held because his personal accounts were frozen and to facilitate negotiations with creditors. (Rabinowitz Dep. I 319:9-23; Fishman Dep. II 69:16-20) However, the Plaintiff held both a judgment against the Defendant and a lien against the proceeds. The time for negotiation had passed. Whether or not the parties were negotiating is irrelevant. It seems quite obvious that the Defendant sought to delay or hinder the Plaintiff's collection efforts by using Fishman's trust account.

[9] (*See* Fishman Dep. I 68:9-15, 69:14-15; *see also* Rabinowitz Dep. II 174:13-23, 315:9-13)

[10] As mentioned, the Plaintiff levied on the Defendant's personal accounts netting $166.70. (Pl.'s Reply, p. 6; Stein Reply Cert., Ex. E, F, and G)

custody while maintaining full control over the funds.[11]  *See DeAngelis v. Von Kiel (In re Von Kiel)*, 461 B.R. 323, 339 (Bankr. E.D. Pa. 2012) (debtor 'concealed' assets where he maintained exclusive control over corporate accounts and regularly withdrew funds for personal expenses). Given the circumstances, the Defendant's course of conduct strongly supports a finding of intent to delay, hinder, or even defraud the Plaintiff.

Moreover, the Defendant transferred substantial sums to or for the benefit of insiders. Courts have noted that "[t]he shifting of assets by the debtor to a corporation wholly controlled by him is another badge of fraud." *Serio v. DiLoreto (In re DiLoreto)*, 266 Fed. Appx. 140, 144-45 (3d Cir. 2008) (citing *In re Watman*, 301 F.3d 3, 8 (1st Cir. 2002)).  Here, the Defendant transferred a substantial portion of the proceeds to his wholly owned business, the Architectural Group.  The Defendant testified that the transfers to the Architectural Group were loans; however, there is no documentation before the Court to substantiate this classification.  In addition, the Defendant transferred more than $35,000 of the proceeds to his wife, Barbara Rabinowitz.  The Defendant seems to argue that his wife was a legitimate creditor.  The Court understands that an intent to prefer one creditor over another is not sufficient to establish intent for section 727(a)(2)(A) purposes.  *See Bernier*, 282 B.R. at 781.  Still, the Defendant has not demonstrated that she is a bona fide creditor.  Importantly, she has not filed a proof of claim against the estate nor did the Defendant include her on his schedules.  Columbia, on the other hand, is a scheduled, legitimate creditor of the estate.  (*See* Stein Reply Cert., Ex. H)  Columbia holds a line of credit in the Defendant's name secured by his personal residence, which is wholly-owned by Mrs. Rabinowitz.  Yet, under the circumstances, the transfers demonstrate a continuing effort to elude or defraud the Plaintiff as the Defendant transferred property subject to the Plaintiff's security interest to another creditor for the direct or indirect benefit of an insider.

In addition to all of the above, the Court is cognizant that the Defendant's evasive behavior did not stop upon the filing of his chapter 7 petition.  In April 2010, the Court entered an Order establishing deadlines for the Defendant to produce documents and appear for deposition pursuant to a 2004 subpoena issued by the Plaintiff.[12]  The Defendant did not comply with the Order until after the Plaintiff moved for contempt in November 2010.  *See Bastrom*, 106 B.R. at 227 (discharge denied pursuant to section 727(a)(2)(A) based, in part, on the debtor's failure to cooperate with discovery requests and an order of the court).

Though the facts weigh heavily against the Defendant, "[e]vidence of some other convincing explanation other than an intent to hinder, delay or defraud may supercede [*sic*] the implications initially presented by the presence of certain badges of fraud." *Brenier*, 282 B.R. at

---

[11] Such conduct may be ethically permissible.  *See* N.J. RPC 1.15(b) ("Except as stated . . . by agreement with the client, a lawyer shall promptly deliver to the client . . . any funds or other property that the client . . . is entitled to receive.").  Nevertheless, in the Court's experience, it is unusual and under the circumstances of this case, all too obvious.

[12] Order Denying Motion of Philip Rabinowitz to Quash Subpoena Issued By Hank Luwisch for Rule 2004 Examination and Production of Documents [ECF Doc. 28], dated April 27, 2010.

782. The Defendant does not submit documentary evidence to establish that the transfers to the Architectural Group were loans made for business purposes, that Mrs. Rabinowitz held a legitimate claim against the Defendant or his estate, or that the Defendant received any kind of value in exchange for the transfers. The Defendant's advice of counsel defense is equally unsupported by the record before the Court. For these reasons, the Court finds that the Plaintiff established the elements of a section 727(a)(2)(A) claim. Thus, the Defendant's discharge is denied. While section 727(a)(2)(A) provides sufficient ground for a denial of discharge, the Court will address the Plaintiff's section 727(a)(3) claim because of the serious nature of the charge.

### III.    Section 727(a)(3) of the Bankruptcy Code

To receive a discharge, a debtor must provide a complete and accurate picture of his prepetition financial affairs. *Fox v. Stumpf (In re Stumpf)*, 2011 Bankr. Lexis 517, *16-17 (Bankr. M.D. Pa. Feb. 9, 2011) (citing *Meridian Bank v. Alten*, 958 F.2d 1226 (3d Cir. 1992)). Indeed, "[c]omplete disclosure is in every case a condition precedent to the granting of the discharge. . . ." *Id*. at 1230.

> Section 727(a)(3) provides for a denial of discharge where:
>
>> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

The purpose of this section is to "give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *Meridian Bank*, 958 F.2d at 1230. "The statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." *Id*.

To set forth a claim under section 727(a)(3), the party objecting to discharge must establish by a preponderance of the evidence that "(1) the debtor failed to maintain and preserve records and (2) such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Id.* at 1230-31 (citing *In re Decker*, 595 F.2d 185, 187 (3d Cir. 1979)). If the party objecting to discharge satisfies these requirements, the burden shifts to the debtor to demonstrate that the deficiency is justified. *Spitko*, 357 B.R. at 306 (citing *Meridian Bank*, 958 F.2d at 1233). Whether a deficiency is justified in turn "depends largely on what a normal, reasonable person would do under similar circumstances." *Id*. at 1231. This inquiry is made on a "case-by-case basis" and includes such considerations as "the education, experience,

and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice." *Id.* Unlike section 727(a)(2)(A), "[i]ntent to defraud or to conceal the debtor's financial condition is not a requisite element to be specifically proved for a denial of discharge under section 727(a)(3)." *Sherwood Fine Art, Inc. v. Burrik (In re Burrik)*, 459 B.R. 881, 891 (Bankr. W.D. Pa. 2011) (quoting 6 COLLIER ON BANKRUPTCY, ¶ 727.03[3][d] at 727-35 (Bender 2010)).

A debtor who is a sophisticated or experienced business person will be held to a greater degree of accountability under section 727(a)(3). *See Meridian Bank*, 958 F.2d at 1231 (finding that debtor was sophisticated because he was an experienced attorney who "knew the value of maintaining adequate records"); *Conde*, 386 B.R. at 582 (finding debtor to be sophisticated where he attended college, was a certified machine tool sales engineer, and was involved in designing automated manufacturing processes). However, the records that a debtor must keep for purposes of section 727(a)(3) "need not be impeccable." *Id.* On the contrary, "such records need only adequately identify a debtor's pre-petition financial dealings so as to make possible [an] intelligent inquiry concerning the transactions." *Id.* at 582-83 (denying discharge under section 727(a)(3) where debtors "produced nothing from which one might be able to reconstruct their pre-petition financial condition and business transactions" and "failed to produce anything at trial that might explain or justify their failure to do so").

Here, the Defendant failed to produce adequate documentation regarding the discussed transfers. The Defendant's bare deposition testimony that the Architectural Group transfers were loans and that the transfers to Columbia were used to clear-up credit for living and business expenses are not enough to satisfy the Defendant's obligation under section 727(a)(3). Though the Court ordered accounting of Fishman's trust account includes a brief account statement and copies of certain checks, such information "does not give a creditor sufficient information to trace [a debtor's] financial history or to reconstruct [his] transactions." *Von Kiel*, 461 B.R. at 337 (quoting *Union Planters Bank N.A. v. Connors*, 283 F.3d 896, 900 (7th Cir. 2002). Creditors, such as the Plaintiff, must be able to determine how the transfers were ultimately applied or used and are to be able to fully understand the financial context in which these transfers took place. Such determinations cannot be made through Defendant's documents.

Even so, the Defendant may justify his failure to maintain and preserve records. *Meridian Bank*, 958 F.2d at 1231. The Defendant simply fails to do so. The Defendant asserts that any failure to provide discovery "was inadvertent." (Def.'s Decl., ¶ 18) He further asserts that he has records relating to the Architectural Group and that computer-trouble prevented him from finding certain emails and correspondence. (Def.'s Br., p. 8; *see* Rabinowitz Dep. I 58:14-59:14, 206:16-25, 208:16-25) In addition, the Defendant testified that a majority of the transfers were used for living and business expenses. (Rabinowitz Dep. I 311:24-312:6, 320:6-14) "Vague, indefinite explanations of expenditures as living expenses, unsupported by documentation, is unsatisfactory." *Von Kiel*, 461 B.R. at 338 (citing *Sonders v. Mezvinsky (In re Mezvinsky)*, 265 B.R. 681 (Bankr. E.D. Pa. 2001) (construing section 727(a)(5)). Such explanations will not excuse the Defendant from his obligation to keep proper records. Lastly,

the Defendant is a licensed professional and an experienced, sophisticated business person. There is little doubt that the Defendant understands the importance of keeping adequate books and records as well as his duty to produce same.

The Court finds that the Defendant failed to meet his burden to preserve books and records. Thus, section 727(a)(3) provides a necessary basis for denial of the Defendant's discharge.

## CONCLUSION

For the reasons detailed above, the elements of a sections 727(a)(2)(A) and 727(a)(3) claim have been proven by a preponderance of the evidence. Accordingly, the Defendant's discharge is denied.

An Order in Conformance with this Opinion has been entered by the Court and is attached hereto.

*s/ Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: March 28, 2012